UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DAVID FINNEMAN,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, FEDERAL CROP INSURANCE CORPORATION, and RISK MANAGEMENT AGENCY,<br><br>Defendants. | 5:25-CV-05019-CCT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff David Finneman obtained an adverse administrative determination by the National Appeals Division (NAD) of the United States Department of Agriculture (USDA) following remand in *Finneman v. United States Dep't of Agric., et al.* (*Finneman I*), No. 5:23-CV-05034-KES, 2024 WL 5158473 (D.S.D. Dec. 17, 2024). Docket 1-21. He filed the current complaint seeking judicial review and reversal of that adverse decision, Docket 1, and now moves for summary judgment in his favor, Docket 32. Defendants United States Department of Agriculture (USDA), Federal Crop Insurance Corporation (FCIC), and Risk Management Agency (RMA) oppose Finneman's motion and request summary judgment in their favor. Docket 39.

## BACKGROUND

In *Finneman I*, the district court detailed the factual and procedural history concerning Finneman's administrative claim against these Defendants. *See* 2024 WL 5158473, at *1–4. That history is not in dispute and is restated here to the extent necessary to give context to the current issues on appeal.

Finneman is a South Dakota resident "engaged in the business of farming in Pennington County[.]" Docket 1 ¶ 1. He was the named insured under a federally reinsured Whole Farm Revenue Protection crop insurance policy for the 2017 crop year. *Id.* Finneman's policy was issued by Producers Agriculture Insurance Company (ProAg), which is an Approved Insurance Provider (AIP) under the Federal Crop Insurance Act (FCIA). *Id.*; *Finneman I*, 2024 WL 5158473, at *1.

Policies, such as Finneman's, are regulated by the FCIA and FCIC. 7 U.S.C. §§ 1501–1524; *see Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 532 F.3d 797, 798 (8th Cir. 2008) (explaining that through the FCIA "and related regulations issued by the Secretary of Agriculture[,]" FCIC exercises "significant control over all aspects of the federal crop insurance program"). Therefore, although the crop insurance policy is a contract between Finneman and ProAg, FCIC determines the policy's terms and conditions. *Balvin v. Rain & Hail, LLC*, 943 F.3d 1134, 1136 (8th Cir. 2019) (noting that "[t]hough the policy is a contract between a farmer and an insurance provider, the FCIC determines the terms and conditions of federal crop insurance policies"). Here, the terms of Finneman's insurance policy with ProAg were promulgated by the FCIC in the

standard form 2017 WFRP Pilot Policy (2017 WFRP Pilot Policy). Docket 1 ¶ 12; Docket 19-12 at 152; *Finneman I*, 2024 WL 5158473, at *1.

In July 2017, Finneman filed a notice of loss under his 2017 WFRP Pilot Policy and submitted an insurance claim to ProAg. *See generally* Docket 1; *see also Finneman I*, 2024 WL 5158473, at *2. ProAg determined that Finneman's policy was voided, and as a result, ProAg "would retain 20% of Finneman's previously paid insurance premiums and not pay Finneman's claim for the losses on the acres of corn and safflower he had insured under his personal WFRP policy." *Finneman I*, 2024 WL 5158473, at *2. Finneman disputed ProAg's determination. *Id.*

The 2017 WFRP Pilot Policy requires, with limited exceptions, that parties arbitrate their disputes, and Finneman commenced arbitration. *Id.* The arbitrator issued a decision favorable to Finneman, and in July 2022, ProAg sought review of the arbitrator's decision by the Deputy of RMA and filed a petition to vacate or, in the alternative, nullify the arbitration award. *Id.* at *3. Finneman counterclaimed for extracontractual damages and sought confirmation of the arbitration award. *Id.* (citing *Producers Agric. Ins. Co. v. Finneman*, No. 5:22-CV-05062, 2024 WL 3347238 (D.S.D. July 9, 2024)). Ultimately, on cross-motions for summary judgment, the district court in *ProAg* vacated the arbitration award, remanded the matter to the arbitrator for further proceedings, and dismissed Finneman's counterclaim for extracontractual damages without prejudice. 2024 WL 3347238, at *11–12.

On the same day Finneman brought the counterclaim in *ProAg*, he submitted a formal request to RMA pursuant to § 33 of the 2017 WFRP Pilot Policy and 7 C.F.R. § 400.352(b)(4) for a determination by FCIC that ProAg failed to comply with the terms of the policy and with FCIC procedures and that such failure caused him to receive an indemnity payment less than the amount to which he was entitled. *Finneman I*, 2024 WL 5158473, at *4. Notably, RMA is the agency tasked with managing the FCIC and "is authorized to administer the crop insurance program on behalf of FCIC." 7 U.S.C. § 6933; 7 C.F.R. § 400.701; *Finneman I*, 2024 WL 5158473, at *3 n.1. Therefore, references in this order to RMA are also to FCIC and vice versa. *See United States v. Hawley*, 619 F.3d 886, 889 (8th Cir. 2010) (noting that RMA was created to administer the federal crop insurance program for FCIC and thus references to FCIC include RMA).

Section 33 of Finneman's 2017 WFRP Pilot Policy is entitled "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review" and contains multiple provisions concerning disputes between the FCIC and insured and the insured and insurer. Docket 1-1 at 38–40 (bold omitted). Section 33 does not contain a specific provision governing claims for extracontractual damages. *See generally id.* However, under 7 C.F.R. § 400.352(b)(4), claims for extracontractual damages may be pursued "if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an

amount that is less than the amount to which the insured was entitled[.]" This determination will be referred to throughout the order as a "non-compliance determination."

On October 31, 2022, RMA informed Finneman that it could not issue his requested non-compliance determination because, unlike other federally reinsured policies, Finneman's 2017 WFRP Pilot Policy does not contain language authorizing RMA to determine whether ProAg failed to comply with the policy and FCIC procedures, resulting in him receiving a payment less than that to which he was entitled. Docket 1-13; *Finneman I*, 2024 WL 5158473, at *3. Finneman appealed RMA's decision, and on review, an administrative law judge (ALJ) with the NAD affirmed the decision. Docket 1 ¶ 36; *Finneman I*, 2024 WL 5158473, at *3; Docket 19-12 at 148–54.

The ALJ noted that certain federally reinsured policies incorporate the Common Crop Insurance Policy Basic Provisions (Basic Provisions) codified at the time in 7 C.F.R. § 457.8. Docket 19-12 at 151–52; *see Finneman I*, 2024 WL 5158473, at *4 n.3. Section 20(i) of those Basic Provisions provides:

> In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us *only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled*. Requests for such a determination should be addressed to the following: USDA/RMA/Deputy Administrator of Compliance/Stop 0806, 1400 Independence Avenue, SW., Washington, DC 20250-0806.

7 C.F.R. § 457.8(b) (2017) (emphasis added); *Finneman I*, 2024 WL 5158473, at *15 (quoting 7 C.F.R. § 457.8(b)).

The ALJ then noted that the 2017 WFRP Pilot Policy only incorporated the "2017 WFRP Basic Provisions," which did not include the Basic Provisions codified at 7 C.F.R. § 457.8 and did not contain language equivalent to § 20(i). Docket 19-12 at 152. The ALJ acknowledged that language similar to § 20(i) was added to "the WFRP Basic Provisions in 2019." *Id.* Ultimately, however, the ALJ determined that the absence of § 20(i) or other similar language in the 2017 WFRP Pilot Policy meant that the "2017 WFRP pilot policy did not call on RMA to determine whether [ProAg] failed to comply and whether such non-compliance caused [Finneman] to receive a lower payment." *Id.* The ALJ therefore concluded that RMA properly declined to issue Finneman a non-compliance determination. *Id.* at 152–53.

Under 7 C.F.R. § 11.9, Finneman requested that the NAD Director review the ALJ's determination. *Finneman I*, 2024 WL 5158473, at *4; Docket 1 ¶ 37. The NAD, through Director Frank Wood, issued a decision affirming the ALJ's determination. Docket 1-17. The Director reasoned that because the 2017 WFRP Pilot Policy did not contain a "provision for RMA to determine whether the AIP failed to comply" or whether the "non-compliance caused [Finneman] to receive a lower payment[,]" "RMA properly declined to issue a non-compliance determination allowing [Finneman] to pursue extracontractual damages against [ProAg]." *Id.* at 4; Docket 1 ¶¶ 38–39.

On May 24, 2023, Finneman filed suit in federal district court (*Finneman I*) against the USDA, RMA, and FCIC, seeking judicial review and reversal of the adverse administrative decision by the agency defendants. *Finneman I*, 2024 WL 5158473, at *4. The parties filed cross-motions for summary judgment. *Id.* Relevant here, Finneman argued that "RMA's decision not to issue a non-compliance determination is arbitrary and capricious" and, in the alternative, that "he does not need a non-compliance determination in order to pursue claims for extracontractual damages against ProAg." *Id.* at *5.

The district court noted that "[f]inal determinations by the NAD Director are reviewable and enforceable by the United States District Court" and that the Administrative Procedures Act (APA) sets out the standards of review. *Id.* at *8. Under the substantial evidence standard, the district court held that the Director's determination was supported by substantial evidence. *Id.* at *12. In so concluding, the court noted that the underlying facts were not in dispute, the facts set out in the decision were sufficient to support the conclusions, and the dispute did not involve differing interpretations of the facts. *Id.*

The court next examined whether the Director's decision was arbitrary and capricious, considering "the full range of arbitrary and capricious factors" under 5 U.S.C. § 706(2)(A). *Id.* at *13–17. The court noted that the Director's decision "required application of relevant law and regulations." *Id.* at *13. It then determined that the Director's "decision was based on the case record, the law, and applicable regulations." *Id.* at *14.

However, the court held that the Director "failed to consider an important aspect of the problem." *Id.* at *16–17. In particular, the court explained that although the Director properly identified that the issue to be determined was "'whether RMA properly applied its regulations governing non-compliance determinations[,]' . . . the Director's analysis of why § 400.352 does not allow for farmers insured under the 2017 WFRP Pilot Policy to obtain a non-compliance determination was limited and conclusory." *Id.* at *16.

The district court further determined that the Director "failed to engage in statutory interpretation to determine whether § 400.352 and § 400.176 independently allow for the parties to request a non-compliance determination." *Id.* Finally, the court noted that the Director "cited no caselaw to support its conclusion that the absence of § 20(i) from the 2017 WFRP Pilot Policy precludes the issuance of a non-compliance determination because the NAD cannot insert such a provision into the contract." *Id.* at *17.

In light of the above, the court concluded that the Director's decision was arbitrary and capricious. *Id.* The court remanded the matter for the agency to "provide a reasoned basis for its determination and consider whether the regulations at § 400.352 and § 400.176(b) provide an independent basis for the issuance of a non-compliance determination under the 2017 WFRP Pilot Policy." *Id.*

On remand, the Director issued a new decision "[u]pon further review of the record[.]" Docket 1-21 at 1. The Director noted that its review of the ALJ's decision considered "the entire case record" to "ensure that the agency's

decision is consistent with the laws and regulations of the agency and with the generally applicable interpretations of such laws and regulations." *Id.* at 3. The Director further quoted language from the applicable regulations and provisions, namely 7 C.F.R. § 400.352(b)(4), 7 C.F.R. § 400.176(b), and § 20(i) of the Basic Provisions. *Id.* at 3–4. Thereafter, the Director adopted the ALJ's determination that the 2017 WFRP Pilot Policy is unambiguous and that there is no language in the policy obligating RMA to issue non-compliance determinations. *Id.* at 4–5.

As support, the Director quoted the following determination by the ALJ:

> As previously discussed, the regulation at 7 C.F.R. § 400.176(b) allowed the option for certain reinsured polices to give rise to damages if RMA consented, but RMA did not include such terms in the 2017 WFRP pilot policy. The legal maxim "*expressio unius est exclusio alterius*" is an interpretative maxim meaning that if certain things are specified in a law, contract, or will, other things are implicitly excluded. The legal maxim applies to contracts, just as it does to laws. . . . Moreover, where the drafter excludes a thing by omission, "a court may not in the process of construction supply the omission."

*Id.* at 5–6 (internal citations omitted). The Director further explained that Finneman's argument that § 400.352(b)(4) provides an independent basis for non-compliance determinations would require adding language to the regulations. *Id.* at 6. In the Director's view, RMA cannot issue non-compliance determinations unless the specific insurance policy includes language expressly authorizing RMA to make such determinations. *Id.* at 6–7.

The Director likened its reasoning in this case to the same conclusion the Director reached when reviewing a 2016 version of the WFRP policy. *Id.* at 7–8.

Similar to Finneman's policy, the 2016 policy did not contain § 20(i) or other similar language, and thus, the Director concluded in that case that RMA was not required to issue non-compliance determinations. *Id.*

In the end, the Director "conclude[d] that substantial evidence supports the Appeal Determination[,]" and "the applicable regulations at 7 C.F.R. § 400.352(b)(4) and 7 C.F.R. § 400.176(b) do not provide an independent basis for the issuance of a non-compliance determination under the 2017 WFRP pilot policy." *Id.* at 8. The Director further concluded that "RMA's decision was consistent with the applicable laws and regulations and with the generally applicable interpretations of such laws and regulations." *Id.* The Director therefore upheld RMA's decision declining to issue Finneman a non-compliance determination that would allow Finneman to pursue extracontractual damages against ProAg. *Id.*

Having exhausted his administrative remedies, Finneman now brings this suit, seeking a judicial determination that the adverse administrative decision was arbitrary and capricious and not in accordance with controlling law. Docket 1 ¶ 9. Finneman moves for summary judgment, arguing that there are no material issues of fact in dispute and the question at issue is one of law. Docket 32; Docket 34 at 8. In response, the Defendants agree that summary judgment is the appropriate way to resolve the parties' dispute, and they request summary judgment in their favor.[1] Docket 39 at 20–22.

[1] The Defendants did not file a cross-motion for summary judgment. Rather, they requested summary judgment in their memorandum in opposition to Finneman's motion. *See* Docket 39 at 1. Nevertheless, Finneman noted the Defendants' request

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law." *NDN Collective v. Retsel Corp.*, No. 5:22-CV-5027, 2024 WL 3903975, at *2 (D.S.D. Aug. 22, 2024) (citations omitted). "The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence sufficient to support an element of its case on which it bears the ultimate burden of proof." *Id.* (citation omitted). "Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must present facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *S. Black Hills Water Sys., Inc. v. Town of Hermosa*, No. 5:21-CV-05070-VLD, 2023 WL 4824956, at *4 (D.S.D. July 27, 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e)).

The Court will "review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Musolf v. J.C. Penney Co., Inc.*, 773 F.3d 916, 918 (8th Cir. 2014)

---

and did not object to the manner in which the Defendants sought that relief. *See* Docket 41. Therefore, the Court will consider the Defendants' request for summary judgment when considering Finneman's motion.

(citation omitted). "In cases involving cross motions for summary judgment, the standard summary judgment principles apply with equal force, though the approach is slightly modified." *Finneman I*, 2024 WL 5158473, at *5. "[T]he court views the record in the light most favorable to plaintiff when considering defendant's motion, and the court views the record in the light most favorable to defendant when considering plaintiff's motion." *Id.* (quoting *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019)).

**APA STANDARD OF REVIEW**

The APA governs this Court's review of the Director's decision. 7 U.S.C. § 6999. Under the APA, a court will set aside an adverse agency decision only if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[2] *Sierra Club v. E.P.A.,* 252 F.3d 943, 947 (8th Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)). This standard of review is "highly deferential" and "narrow." *Org. for Competitive Mkts. v. U.S. Dep't of Agric.*, 912 F.3d 455, 459 (8th Cir. 2018) (citation omitted). An agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

[2] In his complaint, Finneman contends that the adverse decision was arbitrary and capricious, an abuse of discretion, and not in accordance with the law; that the decision is unsupported by substantial evidence; and that the decision is unwarranted by the facts to the extent the facts are subject to a trial de novo. Docket 1 ¶¶ 9, 47, 51. Because it is dispositive, the Court only examines whether the Director's decision is arbitrary and capricious and not in accordance with the law under 5 U.S.C. § 706(2)(A).

*Midland Farms, LLC v. U.S. Dep't of Agric.*, No. 3:13-CV-03029-RAL, 2015 WL 4603261, at *2 (D.S.D. July 29, 2015). Further, an "[a]gency action is 'not in accordance with the law' when it is in conflict with the language of the statute [or regulation] relied upon by the agency." *Boze v. U.S. Dep't of Agric.*, No. 2:23-CV-00068, 2025 WL 2396577, at *5 (M.D. Tenn. Aug. 18, 2025) (alterations in original) (internal citations omitted) (quoting *City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007)). "'[N]ot in accordance with law,' . . . means, of course, *any* law, and not merely those laws that the agency itself is charged with administering." *Fed. Commc'ns Comm'n v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 300 (2003).

**DISCUSSION**

Finneman argues that the Director failed to consider all applicable regulations, including subpart P to Title 7, when it concluded on remand that FCIC/RMA is not obligated to provide him with a non-compliance determination. Docket 41 at 4–5. In particular, he notes that the regulations in subpart P of Title 7, including 7 C.F.R. § 400.352, apply to all policies of insurance by the FCIC, including reinsured policies like his. *Id.* at 5 (citing 7 C.F.R. § 400.351). He then contends that because § 400.352 applies to his insurance policy with ProAg, § 400.352(b)(4) creates "a freestanding regulatory authorization for FCIC to issue noncompliance determinations regardless of whether the policy itself also ***restates*** that right." *Id.* at 8 (emphasis and bold in original). To conclude otherwise, Finneman contends, "is unsound" and

"ignores the clear intent, language and logic of the federal regulation." Docket 34 at 13; Docket 41 at 9.

In response, the Defendants view § 400.352 and its impact on Finneman's 2017 WFRP Pilot Policy differently. *See* Docket 39 at 31–36. They maintain that the Director properly upheld RMA's decision to decline to issue Finneman a non-compliance determination because the terms of Finneman's particular policy with ProAg did not authorize RMA to make such a determination. *Id.* at 33–35. They note that unlike other crop insurance contracts, Finneman's 2017 WFRP Pilot Policy does not contain § 20(i) from the Basic Provisions, and "the maxim *expressio unius est exclusion[ ] alterius* supports that a policy provision left out cannot be written into the contract." *Id.* at 33. The Defendants further contend that the plain language of § 400.352 "limits a non-compliance determination" to those policies authorizing such non-compliance determinations. *Id.* at 34; *see id.* at 35 (asserting that the use of the word "if" in § 400.352 evinces that non-compliance determinations are "not available in all policies").

The Court agrees with the overarching premise that a policy provision left out of a contract cannot be written into the contract. *See White v. Nat'l Football League*, 92 F. Supp. 2d 918, 921 (D. Minn. 2000) (noting that "a court may not rewrite into a contract conditions the parties did not insert or, under the guise of construction, add or excise terms" (citation omitted)). Therefore, the Director properly determined that it could not add § 20(i) from the Basic Provisions to Finneman's 2017 WFRP Pilot Policy. *See* Docket 1-21 at 5–6.

However, the Director's subsequent reasoning fails to address the well-settled principle governing contracts that the terms of a contract are to be read together to give meaning to the entire contract. *See Iron Bow Techs., LLC v. United States*, No. 25-436, 2026 WL 2207784, at *6 (Fed. Cl. July 29, 2026) (explaining that the contract as a whole must be considered); *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 31 (1st Cir. 2022) (explaining that the inquiry "must avoid tunnel vision" and instead "consider contractual provisions within the context of the contract as a whole"). The Director's reasoning also disregards the rule that unambiguous regulations are to be read together to give effect to all provisions and must be read as part of the contract when so incorporated. *See United States v. Am. Coll. of Physicians*, 475 U.S. 834, 842 (1986) (reading a set of regulations "as a whole"); *Armstrong v. Palmer*, 879 F.2d 437, 439 (8th Cir. 1989) (explaining that regulations must be read together to give effect, if possible, to all provisions); *Rain & Hail Ins. Serv., Inc. v. F.C.I.C.*, 426 F.3d 976, 978 (8th Cir. 2005) (considering the incorporated regulations when interpreting a multi-peril crop insurance policy).

Here, when this Court considers Finneman's 2017 WFRP Pilot Policy as a whole, it is clear that the policy expressly makes 7 C.F.R. § 400.352 part of the contract between Finneman and ProAg. Turning first to the "Definitions" section under "Terms and Conditions" and "Your Insurance Contract," "**Policy**" is defined to include:

> The agreement between you and us to insure all insurable revenue on the farm operation, and consisting of the application accepted by us, these Basic Provisions, the Special Provisions, any other

> applicable endorsements or options, the actuarial documents and *the applicable regulations published in 7 CFR chapter IV*.

Docket 1-1 at 3, 7 (emphasis added). Section 400.352 is a regulation published at 7 C.F.R. chapter IV, specifically under subpart P. *See* 7 C.F.R. § 400.352. Then, under 7 C.F.R. § 400.351, that regulation becomes applicable to Finneman's policy with ProAg because regulations in subpart P apply to all policies of insurance. *See* 7 C.F.R. § 400.351 (providing that the regulations in subpart P "*are applicable to all policies of insurance*, insured or reinsured by the Corporation, contracts, agreements, or actions authorized by the Act and entered into or issued by FCIC" (emphasis added)).

However, concluding that § 400.352 is expressly made part of Finneman's 2017 WFRP Pilot Policy does not answer the question whether the Director properly concluded that RMA lacked authority under that regulation or others to issue Finneman a non-compliance determination. To be sure, the Director not only concluded that Finneman's policy imposes no such requirement, the Director also concluded that "the regulations allow the **option** for certain reinsured policies to give rise to damages, **if** RMA consents" in the governing insurance policy and, here, that option was not exercised. *See* Docket 1-21 at 8; *see also id.* at 6 (interpreting § 400.352 to mean that "for those policies that do include authority for RMA to issue non-compliance determinations, a finding of non-compliance opens the door for the consideration of [extracontractual damages]"). In reaching this interpretation, the Director reasoned that the word "if" as used in § 400.352(b)(4) "does not

carry within its two letters the incorporation of some implicit requirement that RMA must issue non-compliance determinations for all federal crop insurance policies." Docket 1-21 at 6. The Director also concluded that the word "unless" as used in § 400.176(b) "does not imply that RMA must issue non-compliance determinations for all policies" and that the phrase "unless such authority is specifically authorized" in § 400.352(a) means that a policy must contain the specific authorization before the RMA can issue a non-compliance decision. *Id.* at 7.

The parties agree that the regulations at issue are unambiguous. *See* Docket 39 at 28 (Defendants stating that "[h]ere the regulations are unambiguous"); Docket 34. When a regulation is unambiguous, courts are not required to give any deference to the agency's interpretation of that regulation. *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019) (explaining that "the possibility of deference can arise only if a regulation is genuinely ambiguous"). As the Supreme Court explained, "if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense." *Id.* at 575. To conclude otherwise when the "law gives an answer[,]" would "'permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation.'" *Id.* (citation omitted).

"The rules of statutory construction apply when interpreting an agency regulation." *Roberto v. Dep't of the Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006). Therefore, this Court's interpretation of § 400.352 and § 400.176(b) begins with

the regulation's plain language and the language of related regulations. *Id.*; *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009). Then, "[i]f the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning." *Roberto*, 440 F.3d at 1350.

Under § 400.352,

> (a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part *unless such authority is specifically authorized by this part or by the Corporation.*
>
> (b) . . .
> (4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (*Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled*)[.]

7 C.F.R. § 400.352 (emphasis added).

Under § 400.176(b),

> No policy of insurance reinsured by the Corporation [FCIC/RMA] and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of punitive or compensatory damages or an award of attorney fees or other costs against the Company issuing such policy, *unless a determination is obtained from the Corporation that the Company, its employee, agent or loss adjuster failed to comply with the terms of the policy or*

> *procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.*

7 C.F.R. § 400.176(b) (2017) (emphasis added).

It is clear from the language of § 400.352 that federal crop insurance laws and regulations preempt state and local laws and regulations that affect federal crop insurance contracts or actions. *See J.O.C. Farms, L.L.C. v. Fireman's Fund Ins. Co.*, 737 F. App'x 652, 654 (4th Cir. 2018) (noting that "Congress has authorized the preemption of state laws or rules that conflict with regulations promulgated and contracts authorized by the FCIC"). It is further apparent that there are limitations under both § 400.352 and § 400.176(b) on an insured's ability to pursue extracontractual damages, namely that before such damages are allowed the insured must obtain a non-compliance determination from the FCIC/RMA. *See generally id.* (discussing the limitation on an insured's ability to pursue litigation against an insurer).

However, there is no language in § 400.352 or § 400.176(b) that imposes an additional requirement that before an insured can obtain a non-compliance determination from FCIC/RMA, the insured's particular policy must give FCIC/RMA specific authority to issue such a determination. Further, although § 400.176(b) bars policies from providing a basis for claims of extracontractual damages, the exception to that bar is an insured obtaining a non-compliance determination from FCIC/RMA—and not that there be a provision in the insurance policy giving RMA the authority to issue non-compliance decisions. Because there is no language in the regulations imposing the requirement

imposed by the Director here, the Director's interpretation of § 400.352 and § 400.176(b) violates the basic interpretation principle that words or phrases are not to be read into unambiguous regulations. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128 (2018) (noting that courts cannot re-write statutes).

Nevertheless, the Director also concluded that the absence of § 20(i) or other similar language in Finneman's 2017 WFRP Pilot Policy means RMA properly declined to issue a non-compliance determination, explaining that § 20(i) "outlines the *mechanism for making non-compliance determinations* concerning a policy[.]" Docket 1-21 at 4–5 (emphasis added). But the language of § 20(i) provides no more *mechanism* for making non-compliance determinations than either § 400.352(b)(4) or § 400.176(b) does. Rather, by its plain terms § 20(i), like § 400.352(b)(4) and § 400.176(b), imposes the requirement that an insured obtain a non-compliance determination and that the non-compliance determination come from FCIC/RMA.[3] *See* 7 C.F.R. § 457.8 (2017) (the previously codified version of § 20(i)).

Because § 400.352(b)(4) applies to Finneman's 2017 WFRP Pilot Policy, the Director's interpretation of that insurance contract was arbitrary and

[3] In dicta in *ProAg*, the district court noted a "paradox created by the absence of § 20(i) in the WFRP Pilot Policy" because without § 20(i), "the policy contains no provision that limits recovery for extracontractual damages to actions for judicial review." 2024 WL 3347238, at *11. Because this case concerns only whether the Director correctly held that RMA properly declined to issue Finneman a non-compliance determination, the Court does not address the pathway (judicial review or otherwise) by which extracontractual damages are pursued under the 2017 WFRP Pilot Policy.

capricious.[4] *Rain & Hail Ins. Serv.*, 426 F.3d at 980 ("In reviewing an agency's interpretation of a contract, [courts] ask whether the interpretation was arbitrary or capricious." (citing *Nesseim v. Mail Handlers Benefit Plan,* 995 F.2d 804, 806–07 (8th Cir. 1993))). Further, because nothing in the language of the governing regulations imposes a requirement that the *insurance policy* contain a specific provision giving FCIC/RMA the authority to issue non-compliance determinations, the Director's interpretation of § 400.352, § 400.176(b), and § 20(i) is not supported by the plain text of these regulations and is not in accordance with the law. *See Midland Farms*, 2015 WL 4603261, at *8 (finding an agency's decision not in accordance with law when decision was not supported by the language of the governing regulations). As such, the Director erred when it determined that "RMA properly declined to issue a non-compliance determination that would allow [Finneman] to pursue extracontractual damages against [ProAg]." *See* Docket 1-21 at 8.

Although the Director's error in *Finneman I* necessitated remand, here remand would be futile because a correct application of the legal standard leads to only one conclusion—Finneman is entitled to a determination by FCIC/RMA whether "the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less

---

[4] The Director's prior final agency decisions on this issue do not give credence to the agency's current interpretation of the regulations. *See Missouri v. Trump,* 128 F.4th 979, 994 (8th Cir. 2025) (explaining that "[t]he agency's consistently wrong interpretation cannot rewrite the statute's text to change its meaning").

than the amount to which the insured was entitled[.]" *See* 7 C.F.R. § 400.352(b)(4). *See also Union Pac. R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 901–02 (8th Cir. 2013) (declining to remand because there was only one supportable conclusion). In light of this determination, it is unnecessary to address Finneman's alternative argument that "current law permits him to proceed with his tort-based remedies as an alternative to recovery under the WFRP policy." *See* Docket 34 at 16. *See also ProAg*, 2024 WL 3347238, at *11 (similarly declining to address whether Finneman's tort-based claims are barred in the absence of a non-compliance determination).

**ORDER**

For the reasons stated above, it is hereby

ORDERED that Finneman's motion for summary judgment, Docket 32, is granted. It is further

ORDERED that the Defendants' request for summary judgment, Docket 39, is denied. It is further

ORDERED the Director's decision, Docket 1-21, that RMA properly declined to issue Finneman a non-compliance determination under his 2017 WFRP Pilot Policy and the governing regulations is reversed.

Dated September 21, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE